1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10         **WESTERN DIVISION**

| | |
|---|---|
| **JOE PETER LOSORELLI,** | No.  CV 14-1659  AJW |
| **Plaintiff,** | |
| **v.** | |
| **CAROLYN W. COLVIN,** | **MEMORANDUM OF DECISION** |
| **Acting Commissioner of the Social** | **AND ORDER** |
| **Security Administration,** | |
| **Defendant.** | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts.  [See JS 2-3]. Following a hearing, the Administrative Law Judge ("ALJ") issued a written hearing decision denying benefits. The Appeals Council granted plaintiff's request for review and remanded the matter to the ALJ for further administrative proceedings and a new decision.  In a written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national

1  economy. [JS 2-3]. Therefore, the ALJ again concluded that plaintiff was not disabled at any time

2  through the date of his decision. [JS 3; Administrative Record ("AR") 16-28].

3  **Standard of Review**

4      The Commissioner's denial of benefits should be disturbed only if it is not supported by

5  substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050,

6  1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).   "Substantial

7  evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart,

8  427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  "It is such relevant evidence as a reasonable mind might

9  accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

10  (internal quotation marks omitted). The court is required to review the record as a whole and to

11  consider evidence detracting from the decision as well as evidence supporting the decision.  Robbins

12  v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089

13  (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of

14  which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954

15  (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

16  **Discussion**

17  **Medical opinion evidence**

18      Plaintiff contends that the ALJ erred in rejecting the opinions of examining psychologists

19  Dr. Francesca Balada and Dr. Gabriela Gamboa.

20      The ALJ found that plaintiff had no severe physical impairments, but that he had severe,

21  medically-determinable mental impairments consisting of major depressive disorder, depressive

22  disorder not otherwise specified ("NOS"), generalized anxiety disorder, rule out bipolar disorder,

23  rule out anxiety disorder NOS, and alcohol abuse in early remission. [AR 18].  The ALJ further

24  found that plaintiff had no exertional limitations, but that he had nonexertional limitations restricting

25  him "simple, routine, repetitive work" that does not involve directing others or engaging in abstract

26  thought or planning, entails no more than simple work-related decisions and routine workplace

27  changes, requires only occasional supervision and occasional interaction with coworkers, does not

28  require direct interaction with the public, and does not require "tandem tasks" with coworkers. [AR

20].

In making his RFC finding, the ALJ credited the April 2010 opinion of the Commissioner's consultative examining psychiatrist, Dr. Bagner. [AR 23].    The ALJ rejected the opinions of three other clinicians who examined or treated plaintiff: Dr. Balada, Dr. Gamboa, and Mr. Leland, a licensed marriage and family therapist. [See AR 21-25].

Based on a clinical interview and mental status examination, Dr. Bagner diagnosed depressive disorder NOS, rule out anxiety order NOS, and alcohol abuse in early remission.  He assessed the following mental functional limitations: no limitation completing simple tasks; mild limitation interacting with supervisors, peers, and the public; mild limitation maintaining concentration and attention; mild limitation completing complex tasks; and mild to moderate limitation handling normal work stresses and completing a normal work week. Dr. Bagner gave plaintiff a Global Assessment of Function ("GAF") score of 65.[1] [AR 23, 423-426].

A treating or examining doctor's opinion that is contradicted by another doctor's opinion may be rejected only for specific and legitimate reasons that are based on substantial evidence in the record.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144,

---

[1] As explained by the Ninth Circuit,

"[a] GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." According to the DSM–IV [Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition], a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." A GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning." Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.

Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 n. 2 (9th Cir.1998) and citing SSR 85–15, 1983–1991 Soc. Sec. Rep. Serv. 343 (S.S.A 1985) ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.")).

1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

**Dr. Balada**

Dr. Balada examined plaintiff in January 2011.  [See AR 23-24, 529-536, 538-542]. She conducted a clinical interview and mental status examination and also administered psychological tests.[2] Dr. Balada diagnosed major depressive disorder and generalized anxiety disorder. [AR 529]. She assessed marked limitations in all work-related mental functional abilities.  [AR 531-534].  She also opined that plaintiff "is unable to complete occupational responsibilities.  Due to his current psychological and medical impairments, this patient is unable to perform work activities on a sustained, regular basis, [and] therefore is considered disabled." [AR 542].  Dr. Balada  gave plaintiff a GAF score of 40 [AR 529], denoting "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." See DSM-IV at 27-36.

The ALJ found Dr. Balada's opinion "not persuasive" and gave it "little weight." [AR 25]. Plaintiff contends that the ALJ's reasons for rejecting Dr. Balada's opinion in favor of the conflicting opinion of Dr. Bagner were not specific, legitimate, and based on substantial evidence in the record. [JS 8-12].

The ALJ reasoned that Dr. Balada's opinion was entitled to little weight because she saw plaintiff "only one time." [AR 25].  As plaintiff points out, Dr. Bagner also saw plaintiff only once, but the ALJ did not discredit his opinion on that basis.  [JS 9; AR 24, 423-426].  Since Dr. Bagner, Dr. Balada, and Dr. Gamboa each examined plaintiff only once, the frequency of examination does not provide a legitimate basis for giving their opinions unequal weight. See 20 C.F.R. §§

---

[2] In addition to conducting the St. Louis University Mental Status Examination, Dr. Balada administered the Wechsler Adult Intelligence Scale-IV, Bender-Gestalt Visual Motor Test, Trails A and B, FAS Test of Verbal Fluency, Wechsler Memory Scales, Beck Depression Inventory, National Adult Reading Test, and Visual and Auditory Attention Testing. [AR 540].

404.1527(c)(i), 416.927(c)(i) (citing the "frequency of examination" as one factor used to weigh medical opinions). Conversely, the ALJ credited Dr. Bagner's opinion because it was "based on clinical findings [made] at the consultative examination." [AR 24]. Like Dr. Bagner, Dr. Balada and Dr. Gamboa based their opinions on clinical findings made during their respective one-time consultative examinations, so that factor does not justify giving Dr. Bagner's opinion greater weight.

The ALJ also inferred that Dr. Balada was biased in plaintiff's favor because plaintiff was referred to her by his attorney, drove to her office in Mission Viejo for the examination "even though [he] lived in Glendora," and paid $300 for the examination. [See AR 21, 25].

The fact that plaintiff's counsel referred him to Dr. Balada, without more, does not support an inference that Dr. Balada is biased. Absent evidence of "actual improprieties" in the manner in which a medical report was obtained or prepared, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester, 81 F.3d at 832 (holding that the ALJ erred in rejecting an examining psychologist's opinion because his reports "were clearly obtained by the claimant's attorney for the purpose of litigation," and noting that "the [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits" ) (citing Ratto v. Sec'y, 839 F. Supp. 1415, 1426 (D. Or. 1993)).

The ALJ drew a negative inference from the "lengthy distance" plaintiff had to drive to see Dr. Balada in Mission Viejo, but that inference was unwarranted. During the hearing, the ALJ asked plaintiff why he had to drive "all the way down to Mission Viejo from Glendora" to see Dr. Balada. [AR 108]. Plaintiff testified that his "attorneys from Binder & Binder" gave him a choice of three providers to see for an examination. Although plaintiff did not mention where his attorneys' office was located, the record indicates that plaintiff was (and is) a client of the Binder & Binder office in the city of Orange, California, which is about 20 miles from Mission Viejo. [See AR 8, 11, 203]. Plaintiff testified that he selected Dr. Balada because her fee was "cheaper" and her office was the closest of the three to his home. [AR 108]. Plaintiff's counsel told the ALJ that Binder & Binder has a list of "independent medical evaluators that we approve of. And based on the cost and the fee

of the doctors and the location of the doctors, we give the references to our claimants and they choose who they would like to see." [AR 108].   Furthermore, the $300 fee for Dr. Balada's examination was less than the $357 fee that the Commissioner authorized as payment for the consultative psychological evaluation with psychological testing that Dr. Gamboa conducted at the Commissioner's request. [See AR 553].

Viewed in the context of the record as a whole, the inference of bias drawn by the ALJ from the circumstances surrounding Dr. Balada's examination was unreasonable. See Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that a doctor's "credibility is not subject to attack" on the ground that the claimant was referred by his attorney unless "the opinion itself provides grounds for suspicion as to its legitimacy" or there is evidence of a "deliberate[] attempt[] to mislead the ALJ for the purpose of helping [the] claimant obtain benefits").

Additional reasons given by the ALJ for rejecting Dr. Balada's opinion were that she "failed to perform a mental status examination but drew numerous conclusions that would stem from one," and that her report "does not connect the psychometric tests to [plaintiff's] symptoms," "does not state in detail the numerical values of the test results, which is troubling," and "failed to address the [Beck Depression Inventory] . . . ." [AR 25].   Those reasons are not legitimate or supported by substantial evidence in the record.

First, Dr. Balada stated that she did perform a mental status examination, specifically, the "St. Louis University Mental Status Examination" ("SLUMS"), and that plaintiff "scored 28/30 with significant evidence of impaired cognition and impairment of orientation to person, time and place." [AR 540]. Second, Dr. Balada's narrative report and questionnaire include descriptions of plaintiff's clinical presentation and symptoms that correlate with the reported test results. [See AR 530-531, 540-541].   Third, Dr. Balada reported the numerical results for two of the tests she administered, the SLUMS (28/30) and the Wechsler Adult Intelligence Scale-IV (a full-scale IQ score of 82, and scores in the bottom 25th percentile in some testing subgroups). [AR 535, 540-541].   As for the remaining tests—including the Beck Depression Inventory—Dr. Balada provided a narrative description of plaintiff's performance. Regarding the Beck Depression Inventory, she wrote that plaintiff's performance was "far below average range," and that he "exhibited significant signs of

depression and depressive symptoms and diagnoses." [AR 540].  She also explained that on the Bender-Gestalt and Trails A and B, for example, plaintiff  "scored below average and showed several perseveration errors and rule breaks," that on the Wechsler Memory Scale, plaintiff "scored below average on both Logical Memory Subtests (Delayed Recall and Recognition) with evidence of impaired delayed recall," and that plaintiff's Visual and Auditory Attention Testing score "revealed below average scores in measures of auditory and visual memory for immediate and delayed recall, with impairment in concentration and working memory," with "deterioration in word-finding and naming abilities and in tests of executive function")].  Although including all of the raw test data would promote transparency, the ALJ did not point to any facts suggesting that Dr. Balada's narrative description of plaintiff's results was unreliable or that the absence of the raw data undermined the legitimacy of her conclusions.  This is especially true given that the ALJ did not utilize a medical expert and, "as a lay person, . . . [he] is 'simply not qualified to interpret raw medical data in functional terms.'"  Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (per curiam) and citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)).  Furthermore, although Dr. Balada could have provided more detail about plaintiff's numerical test results, Dr. Bagner did not have the benefit of *any* test psychological test results in forming his opinion.

    The ALJ also erred in discrediting Dr. Balada's opinion because she "accepted [plaintiff's] subjective complaints at face value without independently and neutrally verifying [plaintiff's] veracity with objective criteria." [AR 25].  The premise that the "veracity" of a claimant's subjective mental complaints can be "verified" with "objective criteria" is faulty.  As the Sixth Circuit has explained, psychiatric impairments are "not as readily amenable to substantiation by objective laboratory testing as a medical impairment. [C]onsequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine."  Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam) (ellipses omitted) (quoting Poulin v. Bowen , 817 F.2d 865, 873-874 (D.C. Cir. 1987)).  "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be

rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." Blankenship, 874 F.2d at 1121 (quoting Poulin, 817 F.2d at 873-874).

Under the Commissioner's regulations, the existence of a mental impairment is established by medical evidence consisting of signs, symptoms, and laboratory findings. Symptoms are the claimant's description of his or her impairment, while psychiatric signs are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality. Medically acceptable laboratory findings include psychological test results. 20 C.F.R. §§ 404.1508, 416.908; 404.1520a(b)(1), 416.920a(b)(1); 404.1528(b)&(c), 416.928(b)&(c). The record does not support the conclusion that Dr. Balada blindly or uncritically accepted plaintiff's subjective symptoms. Instead, she permissibly relied on his symptoms along with psychiatric signs (abnormal mental status examination results) and laboratory findings (psychological test results). See Ferrando v. Comm'r of Soc. Sec. Admin., 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011) ("[M]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders."); Regennitter v. Comm'r, Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir. 1999) (holding that the ALJ erred in rejecting an examining psychologist's opinion for accepting the claimant's statements "at face value" because the psychologist interviewed and tested the claimant, made findings, explained how his findings supported his diagnoses, and did not find that the claimant was malingering or deceptive).

The ALJ also faulted Dr. Balada's report because she noted that plaintiff's "psychiatric problems go back 30 years," but plaintiff "did not allege any psychiatric impairment when he applied for benefits," and because Dr. Balada reported in response to a questionnaire that plaintiff had required 15 psychiatric hospitalizations in the last 20 years when there was record evidence of only two psychiatric hospitalizations. [AR 25]. Those are not legitimate reasons for rejecting Dr. Balada's opinion as a whole. Dr. Balada reported that plaintiff "required hospitalization *or*

*emergency room treatment* for his/her symptoms" 15 times in 20 years. [AR 531 (italics added)].

That statement is consistent with plaintiff's testimony during the hearing that he had to go to the

emergency room 10 to 15 times for his symptoms, in particular severe, chronic insomnia. [AR 52].

The ALJ is correct that plaintiff did not allege mental problems in his initial application for benefits,

in which he stated that he could not work due to chronic head pain, lack of oxygen to the brain, and

a sleep disorder. [AR 276]. Nonetheless, the ALJ found that plaintiff had severe mental disorders,

and plaintiff testified that he had been "ill" since 1977, that he had been fired from his "first 10 to

15 jobs" because he "just couldn't relate," that he had first seen a psychologist in the "early 1980s"

on the recommendation of his medical doctor, and that he "probably had [depression] most of [his]

life . . . ." [AR 46, 48, 52, 72, 103-104]. Plaintiff also testified, and the ALJ found, that he had been

psychiatrically hospitalized in November 2005 and February 2010, and that he was receiving

ongoing mental health treatment. [AR 21, 73-74, 105]. The record as a whole belies the ALJ's

suggestion that the statements he identified in Dr. Balada's report were so plainly incorrect or

misleading that they justified rejecting her opinion.

For all of these reasons, the ALJ did not meet his obligation to articulate specific and

legitimate reasons based on substantial evidence in the record for rejecting Dr. Balada's opinion.

### Dr. Gamboa

The ALJ also rejected the opinion of Dr. Gamboa, the Commissioner's consultative

examining psychologist. [See AR 21-25].

Dr. Gamboa examined plaintiff in April 2012. [AR 554-561]. She conducted a clinical

interview, performed a mental status examination, reviewed Dr. Balada's January 2011 report, and

administered the following psychological tests: Beck Depression Inventory, Millon Clinical

Multiaxial Inventory-II, Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), Wechsler Memory

Scale-IV, Bender Visual-Motor Gestalt Test-II. [AR 554]. She included the numerical test data a in

her report opined that plaintiff's test results were "a generally valid estimate of [plaintiff's] function

at this time." [AR 559].

Dr. Gamboa reported that plaintiff had a full-scale IQ score of 82 on the WAIS-IV, the same

score reported by Dr. Balada. [AR 558]. Dr. Gamboa concluded that plaintiff's overall cognitive

ability fell in the average to borderline range. [AR 559]. His "probable DSM-IV diagnoses" were major depressive disorder and generalized anxiety disorder. Dr. Gamboa gave plaintiff a GAF score of 47 [AR 559], signifying "serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job." See DSM-IV at 27-36.

Dr. Gamboa concluded that plaintiff demonstrated a "mild inability to understand, remember, and carry out short and simplistic instructions," a "moderate inability to understand, remember, and carry out detailed instructions," a "mild-to-moderate inability to make simplistic work-related decisions without special supervision," and a "moderate-to-marked inability to interact appropriately with supervisors, coworkers and peers." [AR 560; see AR 562-563]. She opined that plaintiff was "socially bizarre," "very tangential," "got out-of-topic," and "struggle[d] interpersonally." [AR 560; see AR 562]. She "strongly recommended" mental health services "especially with social skills and not much in[sight] on his difficulties." [AR 560].

Notwithstanding the general consistency between the findings and opinions of Dr. Balada and Dr. Gamboa, Dr. Gamboa's inclusion of plaintiff's numerical test data in her report, the ALJ gave Dr. Gamboa's opinion "limited weight." [AR 24]. The ALJ's reasons for rejecting Dr. Gamboa's opinion are not legally sufficient.

First, the ALJ remarked that Dr. Gamboa accepted plaintiff's subjective complaints at face value without independently verifying them through testing or other means, a rationale that is not legitimate for the reasons already explained, and that also lacks the support of substantial evidence in the record, particularly in view of Dr. Gamboa's assessment that plaintiff was an "adequate historian" who was "cooperative" and exhibited "adequate efforts" during the evaluation, and her conclusion that plaintiff's test results were "generally a valid estimate of" his functional level based on clinical observations. [AR 554, 557 559].

Second, the ALJ pointed to plaintiff's ability to "drive, attend to personal care, and shop." [AR 24]. Performing a wide range of daily activities may undermine a claimant's subjective complaints of disabling symptoms; however, plaintiff's admitted ability to perform a limited range daily activities is not inconsistent with his subjective allegations. See Garrison v. Colvin, 759 F.3d

995, 1016 (9th Cir. 2014) (noting that "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," and holding that the ALJ erred in concluding that the plaintiff's daily activities of talking on the phone, preparing meals, cleaning her room, and helping care for her daughter were inconsistent with her pain complaints). Furthermore, Dr. Gamboa took into account plaintiff's ability to perform those daily activities in formulating her opinion, so there is no inconsistency. [See AR 557].

Finally, the ALJ pointed to treatment records from East Valley Community Center revealing that plaintiff was oriented to time, place, person, and situation; had normal insight and judgment; and exhibited appropriate mood and affect. [AR 24-25 (citing AR 603-604, 607-608, 613-614)]. Those findings were made by Rossylynn Davidson, a nurse practitioner, during plaintiff's office visits in April, May, and July 2012 to follow up on complaints of head pain. A nurse practitioner is not an "acceptable medical source" under the Commissioner's regulations, but instead falls into the category of "other sources." The ALJ "may" use information in the record from "other sources" "to show the severity" (but not the existence) of a claimant's medically determinable impairments and how those impairments affect the ability to work. See 20 C.F.R. §§ 404.1508, 416.908, 404.1513(a)(d), 416.913(a)(d).

Ms. Davidson's findings are not specific, legitimate reasons for rejecting Dr. Gamboa's opinion. Dr. Gamboa is an "acceptable medical source," and she is also a specialist in a relevant mental health discipline, psychology. See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). The ALJ did not point to any facts justifying rejecting her opinion on account of a few findings made by an "other source" who saw plaintiff for complaints of head pain and insomnia. In addition, Ms. Davidson completed a form in August 2012 stating that plaintiff "does not use alcohol or illicit drugs" and "needs to be evaluated by psychiatry," indicating that she concluded that plaintiff's mental health issues were significant enough to require referral to a specialist. [AR 620]. In addition, the ALJ expressly rejected the opinion of Mr. Leland, plaintiff's treating licensed marriage and family therapist, because he was not an "acceptable medical source," notwithstanding that Mr.

1    Leland is a mental health professional, unlike Ms. Davidson; saw plaintiff significantly longer and

2    more often than Ms. Davidson did; and treated plaintiff for his psychological problems.  [See AR

3    25, 489-496].

4         For all of these reasons, the ALJ did not articulate legally sufficient reasons for rejecting Dr.

5    Gamboa's opinion.

6         **Remedy**

7         The choice whether to reverse and remand for further administrative proceedings, or to

8    reverse and simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211

9    F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further

10   proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion),

11   cert. denied, 531 U.S. 1038 (2000).  The Ninth Circuit has observed that "the proper course, except

12   in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa

13   v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per

14   curiam)); see Treichler v. Comm'r of Soc. Sec. Admin.775 F.3d 1090, 1099 (9th Cir. 2014)

15   (describing this as the "ordinary remand rule").  A district court, however,

16        should credit evidence that was rejected during the administrative process and

17        remand for an immediate award of benefits if (1) the ALJ failed to provide legally

18        sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that

19        must be resolved before a determination of disability can be made; and (3) it is clear

20        from the record that the ALJ would be required to find the claimant disabled were

21        such evidence credited.

22   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178).  The

23   Harman test "does not obscure the more general rule that the decision whether to remand for further

24   proceedings turns upon the likely utility of such proceedings."   Harman, 211 F.3d at 1179; see

25   Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate

26   "if enhancement of the record would be useful").

27        The ALJ did not articulate legally sufficient reasons for rejecting the opinions of Dr. Balada

28   and Dr. Gamboa, which were consistent with each other and well-supported by clinical and

1  diagnostic findings.  Their opinions also were consistent with the July 2013 opinion of Esther Lee,

2  Ph.D. of Downtown Mental Health Center ("Downtown MHC"), which was considered the Appeals

3  Council and therefore is part of the record in this action. [AR 1-7, 656-663].  See Brewes v. Comm'r

4  of Social Sec. Admin., 682 F.3d 1157, 1160, 1162-1163 (9th Cir. 2012).  Dr. Lee's report states that

5  plaintiff received mental health treatment five times a month at Downtown MHC beginning in

6  March 2013, about nine months after the ALJ denied benefits.  Dr. Lee diagnosed major depression,

7  gave plaintiff a GAF score of 41, found plaintiff "markedly limited" in a most of the work-related

8  mental functional abilities assessed, and found him "moderately limited" all but one of the remaining

9  such abilities, which was "not ratable on available evidence." [AR 659-661]. Although Dr. Lee's

10 opinion post-dates the ALJ's August 2012 opinion by about a year, its consistency with the earlier

11 opinions of Drs. Balada and Gamboa is striking and buttresses the reliability of those opinions.

12 Moreover, this case has already been remanded once for further administrative proceedings, and the

13 ALJ issued a second legally deficient decision.

14      Since the ALJ already had two opportunities to properly adjudicate this case, and since it is

15 clear from the record that the ALJ would be required to find plaintiff disabled if the opinions of Dr.

16 Balada and Dr. Gamboa are credited, the matter is remanded for an award of benefits.[3]

17                       **Conclusion**

18      For the reasons stated above, the Commissioner's decision is **reversed**, and the matter is

19 **remanded to the Commissioner for an award of benefits.**

20 **IT IS SO ORDERED.**

21

22 July 16, 2015

23

24                               ANDREW J. WISTRICH
                              United States Magistrate Judge

25

26

27

28

---

[3]     This disposition makes it unnecessary to consider the parties' remaining contentions.